# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

WILLIAM E. MOTLEY,      )
      )
      Petitioner,      )
      )
      vs.      )      **Case number 4:02cv0513 ERW**
      )      **TCM**
MICHAEL BOWERSOX,      )
      )
      Respondent.      )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

The 28 U.S.C. § 2254 petition of William E. Motley ("Petitioner"), a Missouri prisoner, for federal habeas corpus relief, is before the undersigned United States Magistrate Judge for a review and a recommended disposition. See 28 U.S.C. § 636(b).

## Background

Petitioner was charged in January 1997 with the Class B felony of the manufacture or production of methamphetamine, in violation of Mo.Rev.Stat. § 195.211. (Resp. Ex. B at 10.) Shortly thereafter, he was additionally charged with being a prior and persistent offender. (Id. at 13.)

Prior to trial, Petitioner's appointed counsel filed various motions in limine, including a motion to exclude evidence of the ten firearms seized during a search of the house at 519 Church Street; a motion to exclude the post-arrest statement of Elisha Davis "that Lisa Ledbetter 'had nothing to do with it' and that the guns found in the house [on Church Street] belonged to Davis"; and a motion to exclude testimony about who visited 519 Church Street

and why.  (Id. at 37-38, 43-44, 45-46.)  The motion to exclude Davis' statements was denied.

(Id. at 6.)  The motion to exclude evidence of who visited 519 Church Street and why was

sustained after the prosecutor explained that he intended to elicit testimony only about the

"great number of people coming and going, staying for a few minutes at a time . . ."  (Resp.

Ex. A at 11.[1])  A ruling on the motion to exclude evidence of the firearms was deferred.

(Resp. Ex. B at 6.)  Counsel also filed a motion in limine to exclude evidence of an alleged

attempt by Petitioner to utter a bad check.  (Id. at 33-34.)  The prosecutor informed the trial

court that it was the envelope in which the bad check was mailed to Petitioner at 519 Church

Street that he wanted to introduce to establish Petitioner's residence there.  (Resp. Ex. A at

6.)  Trial counsel's only objection to the introduction of the envelope was to the legality of

the search during which it was found.  (Id. at 7.)  The motion to exclude evidence of the bad

check was sustained.  (Id.)

Michael Routh, an officer with the Hannibal Police Department (the "Department"),

was the first witness to testify at Petitioner's jury trial.  (Id. at 138-39.)  He testified that he

was on duty on January 24, 1997, when he saw Petitioner driving a brown Chevy Blazer.

(Id. at 141.)  No one else was in the car at the time.  (Id. at 142.)  Routh further testified that

he was part of a search team that executed a search warrant at 519 Church Street and that

Petitioner resided at that address.  (Id. at 142-43.)  This conclusion was based on information

---

[1]The pagination cited in Respondent's Exhibit A is the pagination of the condensed transcript.

given Routh by a confidential informant and by Petitioner's former girlfriend and on Routh's own observations. (Id.)

Douglas Rader, a detective with the Department, testified that he saw a brown Chevy Blazer when he was conducting surveillance at the duplex at 519 Church Street on January 23 and 24. (Id. at 153, 190.) Rader was also part of the team that executed the search warrant on January 25. (Id. at 153-54.) Three people were in the house when the team entered: Ledbetter, Michael Withrow, and Petitioner. (Id. at 155.) Later, when transporting Petitioner from the Department to the Marion County Jail, Rader noticed that Petitioner smelled like a solvent, "such as ether." (Id. at 156.) Ether is an ingredient used to make methamphetamine. (Id.) Rader then described, at the prosecutor's request, the "Nazi method of manufacturing methamphetamine."[2] (Id. at 159-60.) Rader described several items seized from a closet or found on the floor in the east upstairs bedroom as necessary for the manufacture of methamphetamine. (Id. at 162-69, 171-78, 182-83.) He further testified that a strong smell of solvent is characteristic of the third step in the manufacturing process. (Id. at 188.) And, he identified a picture of an envelope addressed to Petitioner at 519 Church Street as a fair and accurate representation of an envelope found in the east upstairs bedroom. (Id. at 185.) On cross-examination, Rader testified that Withrow and Davis lived at 519 Church Street. (Id. at 193-94.) He had not seen Petitioner before entering the house to

---

[2]"The 'Nazi method' makes use of readily available ingredients and yields a very pure product. The technique takes its name from the method perfected and used by German soldiers during World War II to produce methamphetamine so they could stay alert in the field." **United States v. Lynch**, 322 F.3d 1016, 1017 n.2 (8th Cir. 2003).

search it.  (Id. at 198.)  He had, however, information that Petitioner also lived at 519 Church Street.  (Id. at 203.)

A corporal with the Department, Tom McLaughlin, was part of the search team and took Petitioner into custody.  (Id. at 205, 207.)  He found Petitioner in a back porch and unable to get to the outside door because of the junk piled up against it.  (Id. at 207-08.)

Another member of the search team was James Shinn, an employee with the Northeast Missouri Narcotics Task Force.  (Id. at 211.)  He also transported Petitioner to the Marion County Jail and noticed that Petitioner had a strong smell of ether.  (Id. at 212.)  Shinn had smelled that same odor when conducting previous search warrants of methamphetamine laboratories.  (Id. at 213.)

The State's last witness in its case-in-chief was the detective with the Northeast Missouri Narcotics Task Force who participated in the search team and had seized, among other things, firearms found in the upstairs east bedroom.  (Id. at 228, 233-36, 238.)  In overruling Petitioner's motion in limine to exclude the firearms, the trial court noted that they had been found in the same bedroom as the envelope addressed to Petitioner.  (Id. at 226.)

Petitioner moved for a judgment of acquittal at the close of the State's case.  (Id. at 243-44.)  The motion was overruled.  (Id. at 244.)

Petitioner's first witness was Shinn.  (Id.)  Trial counsel asked Shinn if he had interviewed Davis.  (Id.)  Shinn had.  (Id. at 245.)  The prosecutor then objected to any further testimony on the grounds that the next question was going to be about what Davis had

told Shinn and the answer would be hearsay. (Id.) Trial counsel countered that Davis had told Shinn that the firearms belonged to him and were registered under Ledbetter's name. (Id. at 246.) Noting that Davis was not a party, the trial court rejected the argument that these disclosures were admissions against Davis' penal interest and were, consequently, an exception to the hearsay rule. (Id.)

Petitioner's mother, Madelina Catherina Elizabeth Motley, testified that he was staying at her house "off and on" in January 1997. (Id. at 249.) He would stay with friends if he was out late. (Id.) He had a bedroom in her house and she never saw any chemicals in that room. (Id. at 250.) Nor did she ever smell any chemicals on Petitioner. (Id.) Petitioner's father, William Motley, Sr., testified to the same effect. (Id. at 251-53.) Asked on cross-examination if Petitioner might have been staying nights at 519 Church Street in January 1997 when he was not staying with his parents, Motley replied that he did not know. (Id. at 253.)

A corrections officer, Mary Schaible, testified as a rebuttal witness on behalf of the State. (Id. at 254-55.) She had booked Petitioner into the Marion County Jail on January 25, 1997, and had brought to court the booking card she had completed then. (Id. at 256.) She listed 519 Church Street as his address on the card, and she would have gotten that information from Petitioner. (Id. at 257, 259.) The booking card was admitted into evidence. (Id. at 257.) She also brought with her an inventory list of the items Petitioner had

when booked.  (<u>Id.</u>)  That list included the 519 Church Street address and Petitioner's signature below it.  (<u>Id.</u> at 258.)

Petitioner moved for a judgment of acquittal at the close of all the evidence.  (<u>Id.</u> at 260-61.)  The motion was overruled.  (<u>Id.</u> at 261.)

Less than an hour after retiring to deliberate, the jury returned a verdict of guilty. (Resp. Ex. B at 7.)

Petitioner moved for judgment of acquittal notwithstanding the jury's verdict or, in the alternative, for new trial, raising 50 claims of trial court error.  (<u>Id.</u> at 64-78.)  This motion was denied.  (<u>Id.</u> at 8.)  Petitioner was then sentenced to 20 years imprisonment on the Class B felony charge.  (<u>Id.</u> at 79.)

He appealed, raising five claims of trial court error.  (Resp. Ex. D.)  Specifically, the trial court erred by (1) denying his motion for judgment of acquittal at the close of all the evidence because (a) the State did not prove that he was engaged in any activity relating to the production of methamphetamine, (b) the State failed to prove knowledge, possession, or control, and (c) the State failed to prove that he had the apparent ability to complete the manufacture of methamphetamine; (2) overruling his motion in limine and admitting into evidence the various firearms and ammunition that were seized during the search; (3) submitting instructions five and seven defining the offense of attempted manufacture of a controlled substance because the instructions lowered the State's burden of proof by requiring that the jury find only that he took a "substantial step" towards the commission of the

offense; (4) permitting evidence of uncharged crimes, i.e., extensive and repeated allegations that the residents of 519 Church Street were selling drugs; and (5) overruling his objections to Rader's testimony about the contents of jars depicted in an exhibit, such testimony being without a sufficient foundation.  (Id. at 9-13, 15, 16, 19.)

Noting that the charge submitted to the jury in the two complained-of instructions was for a Class C felony with a lesser burden of proof, the appellate court remanded the case for resentencing.  State v. Motley, 976 S.W.2d 502, 504-05 (Mo.Ct.App. 1998).  Petitioner's remaining grounds were, however, found to be without merit.  The appellate court found, in relevant part, as follows:

> In the present case, defendant argues there was insufficient evidence to support the jury's findings his conduct was a "nearly consummated" attempt to manufacture methamphetamine.  He argues the evidence does not support a finding that he had access or control over the house or room where the items used in manufacture were seized.  Furthermore, he argues that at best the record supported a finding that only the first of four steps in manufacturing methamphetamine was completed.

> . . . We assume *arguendo*, the evidence is not sufficient to support the charged offense of an attempt to manufacture methamphetamine, as a class B felony proscribed by section 195.211 RSMo 1994.  The record supports a finding that defendant did not have the present ability to consummate the offense at the time of his arrest.  The items seized would only permit completion of the first of four steps in manufacturing methamphetamine and part of the second step.

> Defendant does not argue the evidence would not support a finding that defendant made a class C felony substantial step towards manufacturing methamphetamine as defined by section 564.011 RSMo 1994. . . .

> State had the burden to prove defendant's acts went beyond mere preparation and were a "substantial step" toward the manufacturing of methamphetamine.  His conduct and the items seized support a finding of guilt.  He lived at 519

Church Street evidenced by his own admission, an envelope addressed to him at 519 Church Street, and by his presence at the time of the search. At his residence, he accumulated items necessary to complete the first step and part of the second step of the manufacture of methamphetamine. As evidenced by the mixture in the glass jar, the purpose of obtaining the items was for the manufacture of methamphetamine. Finally, the ether emanation from his clothing supports a finding that he actively took part in step three at another unidentified location. We find there was substantial evidence to support a finding defendant committed the statutory inchoate offense defined by section 564.011 RSMo 1994.

. . .

Defendant also argues the trial court erred when it admitted evidence of: (1) the uncharged crime of drug dealing; (2) guns seized from the residence; and, (3) the contents of the jar through the testimony of Detective Rader. The testimony regarding drug dealing was admissible as interconnected with, and nearly contemporaneous with, the circumstances or the sequence of events surrounding the offense charged. For the same reason, there was no prejudice in admitting guns seized from the searched residence as part of the crime scene. Defendant's argument the court erred in admitting a jar seized from the house was not preserved in his motion for new trial and is not an issue of plain error. His argument about the certification of a police officer as an expert and admission of testimony on the process of manufacturing methamphetamine was rejected in <u>State v. Neal</u>, 624 S.W.2d 182, 183 (Mo.App. 1981). . . .

<u>Id.</u> at 506 (interim citations omitted) (alterations added).

Petitioner next filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15.[3] (Resp. Ex. J at 3-8.) His motion was amended by retained counsel and was denied following an evidentiary hearing at which his trial counsel, the prosecutor in his criminal case, and the custodian of the records in the prosecutor's office relating to bad checks testified. (<u>Id.</u> at 14-35; Resp. Ex. I.)

_____

[3]After Petitioner filed his pro se post-conviction motion he was resentenced on a Class C felony charge to 15 years imprisonment. (Resp. Ex. H at 32.)

Again, Petitioner appealed, this time on six grounds. (Resp. Ex. K at 5-10.) Each was found to be without merit. (Resp. Ex. M.) The appellate court's decision reads, in relevant part, as follows:

> On appeal, movant asserts that the motion court erred in not finding trial counsel was ineffective because he had a conflict of interest, he was prejudiced against methamphetamine cases, he failed to object to evidence admitted at trial, he failed to preserve alleged error for appellate review, and he failed to investigate. Movant also claims the court erred in not finding appellate counsel ineffective, [sic] because she failed to raise issues on direct appeal, failed to file a reply brief, and failed to raise issues in the motion for rehearing. Movant further maintains that the motion court erred because it failed to make specific findings of fact and conclusions of law on all issues presented by movant.
>
> . . .
>
> I. <u>Ineffective Assistance of Trial Counsel</u>.
>
> In points one through three, movant asserts error with respect to the denial of his claims that trial counsel was ineffective. In order to establish ineffective assistance of counsel, movant must show that: 1) counsel's performance did not conform to the degree of skill, care, and diligence of a reasonable competent attorney; and 2) movant's defense was prejudiced by his counsel's poor performance. . . .
>
> Actions that constitute sound trial strategy are not grounds for a finding of ineffective assistance of counsel. In order to satisfy the first prong, movant must overcome the presumption that any challenged actions were sound trial strategy, that counsel rendered adequate assistance, and that counsel made all significant decisions in the exercise of professional judgment. . . .
>
> A. <u>Trial Counsel's Failure to Remove Himself From the Case</u>
>
> For his first point movant claims the motion court clearly erred in not finding his trial counsel was ineffective for not removing himself from the case. He argues that counsel had a conflict of interest and that he was prejudiced against methamphetamine cases.
>
>     1. <u>Conflict of Interest</u>

Movant argues counsel was ineffective for failing to disclose that another attorney in the public defender's office represented a co-defendant, Elisha Davis, and movant was prejudiced by that representation because trial counsel did not call Davis to rebut an inference that movant was the owner of the firearms.

. . .

At the 29.15 hearing trial counsel testified that, at the time of movant's trial, charges arising from the same incident were pending against Davis. He testified that he did not represent Davis, but that Davis was represented by William Ekiss, another attorney who worked in the public defender's office. Trial counsel testified that he did not call Davis to testify at trial because, "No attorney licensed to practice law would have consented to Davis being called. He would have asserted a Fifth Amendment privilege on his behalf and would have been unavailable for trial." Trial counsel further testified that Ekiss told him that he was opposed to allowing Davis to testify at movant's trial. Trial counsel gave his professional opinion that if Davis had been called he would have taken the Fifth Amendment. In addition, even if Davis did testify, Davis would have been impeached by several prior criminal convictions. Trial counsel testified he had planned to call a police officer to rebut the inference of movant's ownership of the firearms but his attempts to call this witness failed.

Movant did not show that he was prejudiced by trial counsel's representation. As in State v. Morrow, [sic] 941 S.W.2d 19, 22 (Mo. App. 1997), there was no showing that, if Davis had been represented by an attorney outside the public defender system, that attorney would not have advised Davis to take the Fifth Amendment. The fact that two attorneys from the public defender system defended two participants in the crime did not create a conflict of interest.

2. <u>Trial Counsel's Prejudice Against Methamphetamine Cases</u>

In his amended motion, movant also alleges that his trial counsel had a personal bias against methamphetamine cases and should have removed himself from the case. A newspaper article quoted trial counsel to say that he was in favor of prosecutorial emphasis on certain crimes, such as those involving methamphetamine.

- 10 -

At the hearing, trial counsel agreed he had been interviewed by the Hannibal Courier-Post regarding the increase in criminal caseloads. Trial counsel also agreed he had made the comment to the reporter. However, movant asked no further questions. Movant failed to ascertain whether counsel's belief that methamphetamine cases should be emphasized hampered counsel's ability to represent movant. Movant did not ask counsel if his belief affected the manner in which he handled movant's case and did not show any instances where this belief specifically prejudiced his defense.[4]

. . . Here, movant did not adduce evidence that counsel had a bias which prevented him from effectively representing movant. Further, the state asked counsel if the news article affected his ability to represent movant in an aggressive or zealous manner and counsel responded that he did not believe it did.

. . .

B. Failure of Trial Counsel to Properly Object to and Preserve Evidence for Appeal

In his second point movant asserts that the motion court clearly erred in denying his 29.15 motion because trial counsel failed to properly object to Detective Rader's testimony identifying the contents of a jar found at the scene. Movant also complains that counsel failed to preserve this issue in the motion for new trial.

At trial, Detective Radar [sic] was allowed to testify, over defendant's objections based on lack of a basis for knowledge, that a jar seized at the scene contained a mixture of Pseudoephedrine and grain alcohol, which was a component of the first step in the manufacture of methamphetamine.

. . .

Movant now claims that trial counsel should have objected to the testimony on the basis that there were no laboratory reports identifying the contents of the jar to support Det. Radar's [sic] testimony. Movant's argument is an attempt

---

[4]The undersigned notes that Petitioner testified at the post-conviction evidentiary hearing that trial counsel had represented him in an earlier methamphetamine case and had successfully moved to dismiss that case after a preliminary hearing. (Resp. Ex. I at 69.)

to relitigate, as a claim of ineffective assistance of counsel, the same issue he raised on appeal. A finding of no "plain error" on direct appeal forecloses a movant from relitigating the same issue in a post-conviction motion under the guise of "ineffective assistance of counsel." The finding of no plain error established a finding of no prejudice under Strickland.[5]

Movant also argues that trial counsel failed to preserve this issue in a motion for new trial. Review of ineffective assistance of claims is limited to consideration of alleged errors which deny a defendant a fair trial. A claim of prejudice based solely on a defendant's ability to appeal is not cognizable under Rule 29.15.

. . .

C. Trial Counsel Failure to Investigate and Object to the Admission of Evidence

As his third point movant contends that trial counsel was ineffective because he failed to object to the introduction of an envelope addressed to movant at the Church Street address where he was arrested and he did not investigate witnesses to learn why the envelope was sent to movant at that address. Movant argues that it was important for trial counsel to disassociate movant from the address where he was arrested, and trial counsel's failure to object to the envelope prejudiced him. He further contends that, if counsel had investigated, he would have learned that the source of the address was the Marion County Prosecutor's office.

In the first place, movant's contention that counsel failed to object is refuted by the record. At the hearing, counsel testified that he believed he had objected to the envelope. The exhibit in question is actually a photograph of an envelope addressed to movant at the Church Street residence in which he was arrested. The actual envelope contained a letter from the prosecutor's office concerning a bad check issued by movant. Trial counsel had filed a motion in limine to keep information about the bad check out of trial, which motion was granted. Trial counsel also filed a motion to suppress any physical evidence seized at the Church Street address. The record at trial indicates that counsel did object to the admission of a photograph of the sealed envelope on

---

[5]Strickland v. Washington, 466 U.S. 668 (1984).

the basis of his pre-trial motion to suppress. The objection was overruled and the photograph was admitted as State's Exhibit 20.

Further, the record demonstrates that counsel conducted the investigation and made a strategic choice not to pursue the line of questioning movant now suggests. At the hearing, counsel was asked if he investigated why the envelope was addressed to movant at that address. Counsel replied that he did and, although the prosecutor's file showed that movant had provided the prosecutor with a different address, counsel did not adduce that testimony because the prosecuting attorney told him he would call a witness from his office to testify that his office had obtained the Church Street address from another source. Instead, to disassociate movant from the address, he called movant's parents to show movant lived with them and not at the Church Street address.

Further, counsel testified that, even if the envelope had not been admitted, it would not have changed the outcome of the case because the jury could have inferred movant's guilt from his attempt to flee whether he lived at the address or not.

. . .

In this case, it was clearly a matter of sound trial strategy not to call a witness who would have opened up the subject of movant's bad check file and who would testify to other evidence connecting movant to the address. In addition, there was no showing that the outcome of the trial would have been different had the evidence been explained or kept out. . . .

## II. Ineffective Assistance of Appellate Counsel

. . .

### A. Failure to Raise on Direct Appeal Trial Court Error in Not Ruling Sua Sponte on Newly Discovered Evidence

Movant claims in his fourth point that the trial court erred in not finding his appellate counsel ineffective for failing to raise on direct appeal that the trial court erred in not ruling sua sponte on newly-discovered evidence brought to light at movant's original sentencing hearing. Movant argues that after trial he discovered a booking slip other than the one that the state entered into evidence at trial. He claims that this slip would have been exculpatory

because it had no address listed at the top of it, whereas the slip in evidence at trial had the Church Street address.

At the hearing trial counsel testified that movant provided him with the receipt that bore no address sometime after trial. At the sentencing hearing, trial counsel stated that the reason he could not produce the document at trial was because he did not know it would be needed until the state put on its rebuttal evidence.

Movant did not call appellate counsel as a witness at the evidentiary hearing. Thus movant failed to meet his burden of proof to show that appellate counsel's decision to raise the issue of the newly discovered evidence was not reasonable appellate strategy.

In addition, had the claim been raised on direct appeal, it would not have required reversal and remand for a new trial. . . .

. . . The evidence in the record did not show that movant did not learn of the receipt until after trial. Rather, movant knew about the receipt during trial, but could not access it. A defendant's inability to locate a piece of evidence during trial does not convert the evidence into newly discovered evidence after trial. Movant would not have been entitled to a new trial based on the receipt.

. . .

B. Failure to File a Reply Brief and Raise in a Motion for Rehearing the Trial Court's Opinion had Overlooked Material Matters of Fact and Made a Mistake

For his fifth point movant contends that the trial court erred in failing to find his appellate counsel ineffective because she did not raise in the motion for rehearing the fact that the court of appeals had overlooked material matters of fact in its opinion and made a mistake. Movant also argues appellate counsel was ineffective because she did not file a reply brief.

Movant argues that appellate counsel should have included in the motion for rehearing a claim that this court's opinion incorrectly held that he had not preserved in his motion for new trial his claim that the trial court erred in admitting the jar. He also contends that appellate counsel failed to mention in the rehearing motion that this court erroneously stated that the police officers

recorded seeing a "vehicle belonging to the defendant" at the house where the search warrant was executed.

Even if these claims are cognizable in a 29.15 proceeding, they have no merit. Not only did movant not call appellate counsel and thus not rebut the presumption that her decision not to raise these issues in the motion for rehearing was sound strategy, but also this court was not mistaken in holding that the *specific* allegation of error was not preserved. Further, although there was no direct evidence that movant owned the automobile, there was evidence that he was driving it. A correction of the words "belonging to" to "driven by" in the opinion would not affect the result on appeal and would not have been grounds entitling movant to a rehearing.

Movant also argues that appellate counsel was ineffective for failing to file a reply brief. Because movant failed to raise this claim in his 29.15 motion, it is procedurally waived and unreviewable.[6]

(Id. at 2-13.) (Alterations added.)

Petitioner now seeks federal habeas relief. He raises five grounds in his form § 2254 petition: (1) trial counsel was ineffective for (a) not disclosing that he had a conflict of interest because his office represented Davis; (b) not objecting to the admission of firearms evidence because of this conflict; and (c) not interviewing or subpoenaing key witnesses, i.e., Davis, Sara Reed,[7] and Gerald Cates[8]; (2) appellate counsel was ineffective for failing to (a)

---

[6]The undersigned notes that this claim is also without merit. Appellate counsel did file a reply brief. See Respondent's Exhibit F.

[7]Petitioner testified at the post-conviction evidentiary hearing that Reed would have testified that she was dating Petitioner in January 1997 and that he was then living "on and off" with her and her parents. (Resp. Ex. I at 47, 50, 54.) Trial counsel, on the other hand, testified that it was Reed who had previously called the Department and reported that Petitioner had a transportable methamphetamine lab in her house. (Id. at 27.)

[8]Petitioner testified at the post-conviction evidentiary hearing that he believed that Cates would have testified that Petitioner did not live on Church Street and that he did not see him there. (Resp. Ex. I at 47.) Trial counsel described Cates as an "inherently unreliable witness" and affirmed that he

raise exculpatory issues on appeal, specifically, the booking slip without his address, and (b) address inaccuracies in the appellate court's opinion in his direct criminal appeal, specifically, (i) there was no evidence that he owned a Chevy Blazer and (ii) he had raised in his motion for new trial the issue of trial court error in admitting the jar into evidence; (3) the evidence was insufficient to support his conviction; (4) he was denied his right to appeal because the appellate court refused to either rehear his case or transfer it after the conviction of a co-defendant, Michael Withrow, was reversed for insufficient evidence[9]; and (5) his conviction was obtained by the prosecutor's failure to disclose exculpatory evidence.

As noted by Respondent, additional grounds are raised in an attachment to the petition. These grounds are not numbered or otherwise set apart. Petitioner does not dispute Respondent's identification and description of the additional grounds. They are: (6) trial counsel was ineffective for failing to file a pretrial motion requesting the exclusion of prejudicial testimony about the number of people coming and going from the Church Street house; (7) trial counsel was ineffective for not objecting to the substitution of an instruction defining attempt as a "substantial step" rather than "nearly consummated"; (8) trial counsel was prejudiced against methamphetamine cases and should have withdrawn; (9) trial counsel was ineffective for failing to try to introduce at sentencing evidence of the booking sheet

had "numerous criminal convictions." (Id. at 28.)

[9]See **State v. Withrow**, 8 S.W.3d 75, 81 (Mo. 1999) (en banc) (reversing defendant's conviction under § 195.211 based on evidence that showed, "at best," that he was frequently present at 519 Church Street where "there was an ongoing attempt to manufacture methamphetamine").

without the Church Street address and for not raising the issue in his motion for new trial; (10) trial counsel was ineffective for failing to properly object to the contents of a jar which the State's witness testified contained pseudoephedrine and tableting material; (11) trial counsel was ineffective for failing to object to the introduction of an envelope addressed to Petitioner at Church Street or, alternatively, to call witnesses from the prosecutor's office to explain how the office decided to send the correspondence to Petitioner at that address; (12) appellate counsel was ineffective for failing to argue that the evidence of attempt was insufficient to support his conviction; (13) the post-conviction appellate court erred by concluding that his trial counsel did not have a conflict of interest; (14) the post-conviction appellate court erred by finding that he was attempting to relitigate as an ineffective assistance of trial counsel claim an issue he had unsuccessfully raised on appeal; (15) the post-conviction appellate court erred by finding that trial counsel was not ineffective for not objecting to the introduction of the envelope; (16) the post-conviction appellate court erred by holding that the jury could have inferred his guilt from his attempt to flee because there was no evidence that he had done so; (17) the post-conviction appellate court erred by labeling the booking slip as "newly available" evidence; (18) the post-conviction appellate court erred by finding that appellate counsel was not ineffective; and (19) the post-conviction appellate court erred by concluding that the motion court did not improperly make generalized findings.

Respondent contends that the grounds are without merit, procedurally barred, or not cognizable in § 2254 proceedings. Petitioner counters that any procedural default is excused by his actual innocence and by the ineffective assistance of counsel in all the prior proceedings, including the post-conviction proceedings. He requests an evidentiary hearing.

## Discussion

Procedural Default. Grounds (1)(b), (1)(c), (6), (7), (9), and (12) were not raised in Petitioner's appeal from the denial of his Rule 29.15 motion. Ground (5) was not raised in his direct criminal appeal.

Title 28 U.S.C. § 2254(b)(1)(A) and the Supreme Court bar the granting of habeas corpus relief unless it appears that the state prisoner has exhausted available state court remedies. See **Baldwin v. Reese**, 541 U.S. 27, 27 (2004); **Gray v. Netherland**, 518 U.S. 152, 161 (1996); **Coleman v. Thompson**, 501 U.S. 722, 730 (1991). "'Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." Dan v. Burford, 339 U.S. 200, 204 (1950)).'" **Id.** at 731 (quoting Rose v. Lundy, 455 U.S. 509, 518 (1982)). See also **Weeks v. Bowersox**, 119 F.3d 1342, 1349-50 (8th Cir. 1997) ("Requiring the exhaustion of state remedies both allows the states

to correct any possible constitutional violations without unnecessary intrusion by the federal courts and allows the state courts to create a factual record should the matter proceed to federal court.").

It is undisputed that Petitioner did not present the claims of ineffective assistance of trial counsel raised in Grounds (1)(b), (1)(c), (6), (7), (9), and (12) in his appeal from the denial of his Rule 29.15 motion, see Mo.S.Ct.R. 29.15(a) (requiring claims of ineffective assistance of trial and appellate counsel to be raised in Rule 29.15 motion), and that there is no other available state remedy for him to now present them, see Mo.S.Ct.R. 29.15(l) (forbidding circuit courts from entertaining successive Rule 29.15 motions).  It is also undisputed that he did not present his claim in Ground (5) – his conviction was obtained by the prosecutor's failure to disclose exculpatory evidence – in his direct criminal appeal, see, e.g., State v. Wallace, 43 S.W.3d 398, 402 (Mo.Ct.App. 2001) (addressing in direct criminal appeal argument that prosecutor had withheld exculpatory evidence), or in his Rule 29.15 appeal, see, e.g., Buck v. State, 70 S.W.3d 440, 43 (Mo.Ct.App. 2000) (addressing same issue in context of Rule 29.15 appeal), and that there is no other available state remedy for him to now present it.

"[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.  A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer

'available' to him." **Coleman**, 501 U.S. at 732 (alteration added).  Thus, Petitioner has met the technical requirement for exhaustion of the seven above-listed grounds.

In order to preclude habeas petitioners from avoiding the exhaustion requirement and to "ensure[] that the States' interest in correcting their own mistakes is respected in all federal habeas cases," **id.** (alteration added), the state procedural bar that gives rise to a habeas petitioner having technically satisfied the exhaustion requirement provides an independent and adequate state-law ground for the petitioner's conviction, **id.** at 730; **Gray**, 518 U.S. at 162.  This independent and adequate state law ground prevents federal habeas review of a defaulted claim "unless [the petitioner] can show cause and prejudice for the default, or actual innocence." **Clemons v. Luebbers**, 381 F.3d 744, 750 (8th Cir. 2004) (alteration added).

"'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" **Ervin v. Delo**, 194 F.3d 908, 915 (8th Cir. 1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) (alteration in original). There is no exhaustive catalog of the objective impediments, nor have the precise contours of the cause requirement been clearly defined.  **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999).  "At a minimum, however, [Petitioner] must show that 'something *external* to [him], something that cannot fairly be attributed to him,' caused the procedural default." **Id.** (quoting Coleman, 501 U.S. at 753) (first alteration added; second in original).  The

ineffective assistance of trial or direct appeal counsel may be cause for a procedural default if the claim of ineffective assistance of counsel has been "initially 'presented to the state courts as an independent claim.'" **Taylor v. Bowersox**, 329 F.3d 963, 971 (8th Cir. 2003), (quoting Murray, 477 U.S. at 488), cert. denied, 541 U.S. 947 (2004).  Accord **Evans v. Luebbers**, 371 F.3d 438, 445 (8th Cir. 2004), cert. denied, 125 S.Ct. 902 (2005).

Clearly, Petitioner has not presented any additional claims of ineffective assistance of trial or appellate counsel to the state courts as independent claims that would be cause for his procedural defaults.  He argues, however, that the ineffective assistance of post-conviction counsel may be cause for a procedural default.  This argument is foreclosed by the Supreme Court's holding in **Coleman** that "[t]here is no constitutional right to an attorney in state post-conviction proceedings.  Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings."  501 U.S. at 752 (alteration added) (interim citations omitted).  The Eighth Circuit Court of Appeals has "recognized that this principle applies to claims of ineffective assistance of Rule 29.15 counsel in Missouri."  **Sweet v. Delo**, 125 F.3d 1144, 1151 (8th Cir. 1997).

Petitioner also argues that the lack of adequate counsel at all prior proceedings is cause for his procedural default.  This argument is simply a rephrasing of his contention that the ineffective assistance of trial and appellate counsel is cause for his procedural defaults, an argument which is without merit because such claims have not been presented to the state courts as independent grounds for relief, and of his contention that ineffective assistance of

post-conviction counsel is cause for his default, an argument which is unavailing because such counsel may not be cause for a procedural default.[10]

For the foregoing reasons, the undersigned finds that Petitioner has procedurally defaulted on Grounds (1)(b), (1)(c), (5), (6), (7), (9), and (12) and has failed to establish cause for such default. Thus, it is unnecessary to consider whether he has shown prejudice. See **Abdullah v. Groose**, 75 F.3d 408, 413 (8th Cir. 1996).

Petitioner further argues that the booking slip without the Church Street address establishes his innocence and, consequently, the merits of his procedurally defaulted claims may be reached.

Although Petitioner correctly notes that the merits of a procedurally defaulted claim may be reached if actual innocence is established, see **Cox v. Burger**, 398 F.3d 1025, 1031 (8th Cir. 2005), he has not established such innocence. To do so he "must come forward with new reliable evidence that was not available at trial[.]" **Nance v. Norris**, 392 F.3d 284, 291 (8th Cir. 2004) (alteration added). "The sort of evidence that cannot be used for a Schlup [v. Delo, 513 U.S. 298 (1995)] gateway claim [of actual innocence] includes 'evidence [that] could have been discovered earlier in the exercise of due diligence.'" **Id.** (quoting Cornell v. Nix, 976 F.2d 376, 380 (8th Cir. 1992) (en banc)) (first two alterations added, third in original).

---

[10]The undersigned notes that post-conviction counsel and federal habeas counsel are the same.

Petitioner contends that the booking slip without the Church Street address establishes that he was not a resident there and did not have constructive or actual possession of the methamphetamine manufacturing equipment found.[11] This argument is without merit because (a) the booking slip was discovered at least before the sentencing hearing, see **id.** (rejecting claim that evidence that was available at trial, on direct appeal, and throughout post-conviction proceedings was new for purposes of the actual innocence exception), and (b) it does not establish "that 'it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence,'" **id.** (quoting Schlup, 513 U.S. at 327). "This latter showing must take into account not only the allegedly new evidence, but also the evidence that was in fact before the jury." **Watts v. Norris**, 356 F.3d 937, 941 (8th Cir.), cert. denied, 125 S.Ct. 201 (2004). The jury heard testimony that Petitioner signed his name below the Church Street address on the inventory list and that the booking officer would have gotten that address from Petitioner; heard unchallenged testimony from a police officer that Petitioner lived on Church Street; and saw a photograph of an envelope addressed to Petitioner at Church Street and found there.

Ineffective Assistance of Counsel; Insufficient Evidence. Petitioner did fairly present two of his claims of ineffective assistance of appellate counsel, Grounds (2)(a) and (b), his

---

[11]Were Petitioner to also argue that he is entitled to habeas relief on a substantive claim of actual innocence, this argument would be without merit. "'[C]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceedings.'" **Burton v. Dormire**, 295 F.3d 839, 848 (8th Cir. 2002) (quoting Meadows v. Delo, 99 F.3d 280, 283 (8th Cir. 1996)) (alteration in original). For the reasons set forth below, there was no such violation.

remaining claims of ineffective assistance of trial counsel, Grounds (1)(a), (8), (1), and (11), and his claim of insufficient evidence, Ground (3) to the state courts. Those courts found them to be without merit.

The instant § 2254 petition, filed in 2002, is governed by The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"). See **Williams v. Taylor**, 529 U.S. 420, 429 (2000); **Cross-Bey v. Gammon**, 322 F.3d 1012, 1013-14 (8th Cir. 2003). The AEDPA, codified in part at 28 U.S.C. § 2254(d), mandates that a federal court "not grant habeas relief on a claim that was adjudicated on the merits in state court unless 'it resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" **James v. Bowersox**, 187 F.3d 866, 869 (8th Cir. 1999) (quoting § 2254(d)(1)), or it "'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,'" **Evans v. Rogerson**, 223 F.3d 869, 871 (8th Cir. 2000) (quoting § 2254(d)(2)). See also **Weaver v. Bowersox**, 241 F.3d 1024, 1029 (8th Cir. 2001) ("Section 2254(d) distinguishes between two types of erroneous decisions – those of law and those of fact[.]").

The "contrary to" clause and the "unreasonable application" clause have independent meanings. **Williams v. Taylor**, 529 U.S. 362, 405 (2000). "[A] state court decision is 'contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state

court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [their] precedent.'" **Lockyer v. Andrade**, 538 U.S. 63, 73 (2003) (quoting <u>Williams</u>, 529 U.S. at 405-06) (alterations added).  "On the other hand, a run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." **<u>Williams</u>**, 529 U.S. at 406 (alteration added).  Thus, a state court decision that correctly identifies the controlling legal authority and, applying that authority, rejects a prisoner's claim does not fit within the "contrary to" clause although it might be contrary to a federal court's conception of how that authority ought to be applied in that particular case.  **<u>Id.</u>**

Such a state court decision can, however, fit within the "unreasonable application" clause.  **<u>Id.</u>** at 407-08.  "[W]hen a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within that provision's 'unreasonable application' clause."  **<u>Id.</u>** at 409 (alterations added).  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  **<u>Id.</u>** (alteration added).  Additionally, when making this inquiry, a federal habeas court should note that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law."  **<u>Id.</u>** at 410.  "It is not enough that a federal that a federal habeas court, in its independent review of the legal

question, is left with a firm conviction that the state court was erroneous." **Lockyer**, 538 U.S. at 75 (internal quotations omitted).  And, "'[t]o the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness . . . of the state court's treatment of the contested issue.'"  **Copeland v. Washington**, 232 F.3d 969, 974 (8th Cir. 2000) (quoting Long v. Humphrey, 184 F.3d 758, 761 (8th Cir. 1999)) (alterations in original).

Petitioner argues that appellate counsel should have (a) challenged the trial court's failure to sua sponte rule on the booking slip without the Church Street address and (b) challenged in a motion for rehearing or a reply brief the appellate court's inaccurate description (i) of the Blazer as belonging to Petitioner and (ii) of his motion for new trial as omitting the issue of the jar.

It is well established that the Sixth Amendment guarantees the right to effective assistance of counsel on direct appeal.  See **Douglas v. California,** 372 U.S. 353, 358 (1963).  To succeed on a claim of ineffectiveness of counsel on direct appeal, however, Petitioner must show, first, that appellate counsel's performance was below the reasonable standard of competence and, second, a reasonable probability that the result would have been different absent this deficient performance.  See **Strickland v. Washington,** 466 U.S. 668, 687 (1984); **Gee v. Groose**, 110 F.3d 1346, 1352 (8th Cir. 1997).  Appellate counsel is expected to winnow the issues on appeal to highlight the most meritorious issues and eliminate the sure losers.  See **Jones v. Barnes,** 463 U.S. 745, 751-52 (1983); **Gee**, 110 F.3d

at 1352; **Pollard v. Delo**, 28 F.3d 887, 889 (8th Cir. 1994). Appellate counsel has no duty to raise every nonfrivolous claim on appeal. **Reese v. Delo**, 94 F.3d 1177, 1185 (8th Cir. 1996). See also **Parker v. Bowersox**, 94 F.3d 458, 462 (8th Cir. 1996) ("To perform competently under the Sixth Amendment, counsel is neither required nor even advised to raise every conceivable issue on appeal."). Thus, an attorney's decision not to raise an unwinnable issue on appeal is an important strategic decision in competent appellate advocacy and does not constitute ineffective assistance of counsel. See **Jones**, 463 U.S. at 751-52; **Roe v. Delo,** 160 F.3d 416, 418 (8th Cir. 1998).

The appellate court found that Petitioner would not have been entitled to a new trial based on the booking slip because it was not newly discovered, as required. (Resp. Ex. M at 11-12.) This finding is "presumed to be correct absent 'clear and convincing' evidence to the contrary presented by [Petitioner]." **Perry v. Kemna**, 356 F.3d 880, 883 (8th Cir.) (quoting 28 U.S.C. § 2254(e)(1)) (alteration added), cert. denied, 125 S.Ct. 657 (2004). "This 'presumption of correctness applies to factual determinations made by state courts, whether the court be a trial court or an appellate court.'" **Id.** (quoting King v. Bowersox, 291 F.3d 539, 540 (8th Cir. 2002)). Thus, Petitioner's appellate counsel was not ineffective for not raising the meritless argument that the trial court should have sua sponte ruled on evidence that was not newly discovered.

Nor was appellate counsel ineffective for failing to challenge as inaccurate the appellate court's description of the Blazer as belonging to Petitioner or the motion for new

trial as not including an argument about the admission of the jar. There was no evidence of the address on the registration for the Blazer; indeed, the only evidence was that Routh saw Petitioner driving it and it was parked at the Church Street address. Petitioner did not deny that he was not in the house when it was searched or that he had never been there. And, the appellate court noted that the specific claim presented by Petitioner in the direct criminal appeal was to the Rader's contents of the jar whereas the challenge in his motion for new trial was to its admission as a fruit of the search of 519 Church Street. These findings, presumed to be correct, defeat Petitioner's claims of ineffective assistance of appellate counsel.

Petitioner next argues that his trial counsel was ineffective for not disclosing that he had a conflict of interest because his office represented Davis (Ground (1)(a)); for not withdrawing because he was prejudiced against methamphetamine cases (Ground (8)); for failing to properly object to the contents of a jar identified by Rader as containing pseudoephedrine and tableting material (Ground (10); and for failing to object to the introduction of an envelope addressed to Petitioner at Church Street or, alternatively, to call witnesses from the prosecutor's office to explain how the office decided to send the correspondence to Petitioner at that address (Ground (11)).

"The right to effective assistance of counsel 'is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process.'" **Smith v. Rogerson**, 171 F.3d 569, 572 (8th Cir. 1999) (quoting <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 374 (1986)). "The benchmark for judging any claim of ineffectiveness [of counsel]

must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [relevant proceeding] cannot be relied on as having produced a just result.'" **Jackson v. Gammon**, 195 F.3d 349, 354 (8th Cir. 1999) (quoting Kellogg v. Skon, 176 F.3d 447, 452 (8th Cir. 1999)) (first alteration added; second in original). "Only reasonable competence, the sort expected of the ordinary fallible lawyer is demanded by the Sixth Amendment." **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (internal quotations omitted). Moreover, "[t]here is a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy." **Garrett v. Dormire**, 237 F.3d 946, 949-50 (8th Cir. 2001) (alteration added).

To establish that counsel's lack of competence violated the Sixth Amendment, the petitioner must show that counsel's performance was deficient and prejudicial. **Kellogg**, 176 F.3d at 452. To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" **Greiman v. Thalacker**, 181 F.3d 970, 971 (8th Cir. 1999) (quoting Strickland, 466 U.S. at 687). To establish prejudice, a petitioner must demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Id.**, (quoting Strickland, 466 U.S. at 697). The petitioner "must do more that show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent

judgment, the state-court decision applied <u>Strickland</u> incorrectly." **Hoon v. Iowa**, 313 F.3d

1058, 1062 (8th Cir. 2002).

The question of prejudice from counsel's performance need not be reached, however,

if the performance was not deficient. <u>See</u> **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th

Cir. 1998). Conversely, the question of counsel's allegedly deficient performance need not

be reached if a petitioner has failed to show prejudice. <u>See</u> **Strickland**, 466 U.S. at 697;

**Hoon**, 313 F.3d at 1061; **Siers v. Weber**, 259 F.3d 969, 974 (8th Cir. 2001).

An exception to the <u>Strickland</u> requirement that prejudice be shown to establish an

ineffective assistance of counsel claim exists "where counsel labored under an actual conflict

of interest." **Covey v. United States**, 377 F.3d 903, 907 (8th Cir. 2004). This exception

does not, however, relief the habeas petitioner of the need to show that "'a conflict of interest

*actually affected the adequacy of his representation*[.]'" **Mickens v. Taylor**, 535 U.S. 162,

171 (2002) (quoting <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 349-50 (1980)) (alteration added).

In **Koste v. Dormire**, 345 F.3d 974, 981-82 (8th Cir. 2003), <u>cert. denied</u>, 541 U.S.

1011 (2004), the Eighth Circuit Court of Appeals applied this "actually affected the

adequacy" requirement to an allegation that a habeas petitioner's attorney had a conflict of

interest that compromised her ability to represent him because she worked in the same office

with another attorney against whom the petitioner had an ineffective assistance of counsel

claim arising out of a prior criminal case. The court noted that "<u>Mickens</u> now makes it clear

that, under these circumstances, [the petitioner] is not entitled to automatic reversal of his

conviction." **Id.** at 982 (citing <u>Mickens</u>, 535 U.S. at 168) (alteration added).  The court then noted that following <u>Mickens</u> it was an open question whether the petitioner's trial counsel "even had a sufficient conflict of interest to warrant application of <u>Sullivan</u>." **Id.**  The court nonetheless assumed, without deciding, that the conflict was sufficient and analyzed whether petitioner had shown that his trial counsel's "performance was actually deficient in some specific way and that the deficiency was causally connected to the conflict of interest." **Id.** at 982-83.

Similarly, in the instant case, the undersigned will assume without deciding that trial counsel's representation of Petitioner when another attorney in his office was representing Petitioner's co-defendant created a conflict of interest.  The undersigned finds, however, that counsel's performance was not actually deficient.  Counsel testified that no attorney representing the co-defendant would have permitted him to testify.  The co-defendant, Elisha Davis, had prior criminal convictions.  His testimony that the firearms were his would have exposed him to a federal charge of felon in possession of a firearm.  <u>See</u> 18 U.S.C. § 922(g)(1).  Petitioner cannot show that the fact that both his and Davis' trial counsel worked in the public defender's officer affected the adequacy of his counsel's representation.

Petitioner has also failed to show any prejudice from his counsel's opinion about methamphetamine cases, as reported in a local newspaper.  Counsel testified at the evidentiary hearing that his opinion about methamphetamine cases did not affect his ability to represent Petitioner.  Petitioner did not refute this testimony; indeed, he testified that

counsel had represented him in another methamphetamine case and had gotten the charges dismissed after a preliminary hearing.

Petitioner contends that his trial counsel was ineffective for failing to properly object to the contents of a jar identified by Rader as containing pseudoephedrine and tableting material and for failing to object to the introduction of an envelope addressed to Petitioner at Church Street or, alternatively, to call witnesses from the prosecutor's office to explain how the office decided to send the correspondence to Petitioner at that address.

A claim of ineffective assistance is not viable if the underlying objection is without merit. **Gray v. Bowersox**, 281 F.3d 749, 756 n.3 (8th Cir. 2002). The Missouri Court of Appeals held that there was no plain error in the admission of Rader's testimony about the contents of the jar. See **Motley**, 976 S.W.2d at 506. And, counsel testified that he did not object to the introduction of the envelope because the prosecutor was prepared to call a witness to testify that the Church Street address was obtained from another source. Petitioner did not refute counsel's testimony. See **Burton**, 295 F.3d at 845 (finding it "noteworthy" that habeas petitioner had not called any of the witnesses to the stand during the post-conviction hearing, "the very proceeding in which the trial lawyer's competence was contested," that he contended would have given exculpatory testimony).

Insufficient Evidence. Petitioner contends that there was insufficient evidence to convict him of an attempt to manufacture methamphetamine.

"The Sixth Amendment requires that criminal convictions 'rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" **Johns v. Bowersox**, 203 F.3d 538, 543 (8th Cir. 2000) (quoting United States v. Gaudin, 515 U.S. 506, 510 (1995)). Consequently, a federal court's review of a state prisoner's claim that his or her conviction violated due process because there was insufficient evidence to sustain it "'is limited to determining whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" **Loeblein v. Dormire**, 229 F.3d 724, 726 (8th Cir. 2000) (quoting Gibbs v. Kemna, 192 F.3d 1173, 1175 (8th Cir. 1999)). Accord **Armstrong v. Gammon**, 195 F.3d 441, 444 (8th Cir. 1999). In conducting this "'extremely limited'" review, a federal court "'must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and . . . must defer to that resolution.'" **Sexton v. Kemna**, 278 F.3d 808, 814 (8th Cir. 2002) (quoting Miller v. Leapley, 34 F.3d 582, 585 (8th Cir. 1994)) (alteration added).

Under Missouri law, "it is unlawful for any person to . . . manufacture, produce or attempt to . . . manufacture or produce a controlled substance[.]" Mo.Rev.Stat. § 195.211. Consequently, the jury was instructed to find Petitioner guilty of an attempt to manufacture a controlled substance if he (1) "attempted to manufacture methamphetamine, a controlled substance, by chemical synthesis," and (2) he "knew that the substance he attempted to

manufacture was methamphetamine, a controlled substance." (Resp. Ex. B at 55.) The jury did find him guilty of this charge. (Id. at 63.)

"To find [a] defendant guilty of attempt to manufacture methamphetamine, the State must prove: (1) defendant had the purpose of committing the underlying offense of manufacturing methamphetamine, and (2) defendant did an act which constitutes a substantial step toward the completion of manufacturing methamphetamine." **State v. Cooper**, 108 S.W.3d 101, 107 (Mo.Ct.App. 2003) (citing Withrow, 8 S.W.3d at 79-80). "Thus, defendant must have had either actual or constructive possession of the materials being used to manufacture methamphetamine for the evidence to be sufficient to convict." **Id.**

Although Petitioner challenges the admission of the envelope addressed to him at Church Street and whether he resided at Church Street, the standard is whether, when "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." **Loeblein**, 229 F.3d at 726. Rader testified that items seized from the east bedroom at 519 Church Street were necessary for the manufacture of methamphetamine. The envelope addressed to Petitioner at that address was found near the items. There was testimony that he lived at Church Street. And, he smelled like ether, a characteristic smell in the manufacturing of methamphetamine.

For the foregoing reasons, Petitioner's claim of insufficient evidence to support his conviction is without merit.

Post-Conviction Appellate Court Errors. Petitioner's final seven grounds challenge as error various findings of the Missouri Court of Appeals in his post-conviction proceedings. As noted by Respondent, these grounds are without merit because "'an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition.'" **Gee**, 110 F.3d at 1351-52 (quoting Jolly v. Gammon, 28 F.3d 51, 54 (8th Cir. 1994)).

Evidentiary Hearing. In his traverse, Petitioner requests an evidentiary hearing on the grounds that he has yet to have a full and fair hearing on his constitutional challenges to his conviction.

"A habeas petitioner must develop the factual basis of his claim[s] in state court proceedings rather than in a federal evidentiary hearing unless he shows that his claim[s] rel[y] upon a new, retroactive law, or due diligence could not have previously discovered the facts." **Cox**, 398 F.3d at 1030 (citing 28 U.S.C. § 2254(e)(2)). Nor may an evidentiary hearing be granted "'if the petitioner's claims are procedurally barred or are without merit.'" **Burton**, 295 F.3d at 848 (quoting Reese, 94 F.3d at 1186).

Petitioner's request for an evidentiary hearing presumes that generalized allegations of not receiving a full and fair hearing in the state courts are sufficient. There are no allegations of new, retroactive laws and the facts cited in support of his allegations have

previously been presented to the state courts. Any omission that Petitioner may seek to cure in an evidentiary hearing is one that may only be attributed to post-conviction counsel. An evidentiary hearing may not be granted, however, on the grounds of ineffective assistance of post-conviction counsel because "[t]here is no federal constitutional right to post-conviction counsel." **Cox**, 398 F.3d at 1030 (alteration added). Accordingly, Petitioner's request for an evidentiary hearing should be denied. See **Perry**, 356 F.3d at 889 (rejecting petitioner's claim that he was entitled to an evidentiary hearing in the federal district court to develop a factual basis for a habeas claim, such claim being foreclosed by the limitations of § 2254(e)(2)(B)).

### Conclusion

For the foregoing reasons, Petitioner's grounds for habeas relief are procedurally barred, without merit, or not cognizable § 2254 claims. Accordingly,

**IT IS HEREBY RECOMMENDED** that the 28 U.S.C. § 2254 petition of William E. Motley be **DENIED** without an evidentiary hearing.

The parties are advised that they have eleven (11) days in which to file written objections to this Recommendation and the Memorandum incorporated herein pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in waiver of the right to appeal questions of fact. See **Griffini v. Mitchell**, 31 F.3d 690, 692 (8th Cir. 1994).

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this <u>27th</u> day of May, 2005.